UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MALLORY MEADE,

Plaintiff,

v.

GLOBAL RECOVERY SOLUTIONS, LLC,
ROBERT MARK CASTRO and
CHRISTOPHER FREDERIC VEALE,

Defendants.
_________________________________________/

COMPLAINT

## I. Introduction

1. This is an action for damages brought by a consumer against debt collectors for violating the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, Driver's Privacy Protection Act of 1994 ("DPPA"), 18 U.S.C. § 2721 *et seq.,* Michigan Regulation of Collection Practices Act ("MRCPA"), M.C.L. § 445.251 *et seq.,* and Michigan Occupational Code ("MOC") M.C.L. § 339.901 *et seq*.

2. Defendants, along with other entities and individuals to be identified in discovery, are involved in a fraudulent and ongoing scheme whereby they have conspired to use false representations and threats to coerce the payment of money from consumers across the country who allegedly have failed to repay small, high interest rate loans. This scheme, and similar ones operated by hundreds of entities located in and around Los Angeles, California, Jacksonville, Florida, Buffalo, New York, Atlanta, Georgia, Charlotte, North Carolina, and Rock Hill, South

Carolina, are based on the use of a script, sometimes known as "The Shakedown" or "The Shake," that falsely threatens the consumer with litigation, prosecution, derogatory credit reporting, and other adverse consequences, unless the consumer immediately makes a payment to the caller.

3. On November 4, 2015, the Federal Trade Commission and other law enforcement authorities around the country announced the first coordinated federal-state enforcement initiative targeting deceptive and abusive debt collection practices. The "Operation Collection Protection" initiative is described by the FTC as a nationwide crackdown by federal, state, and local law enforcement authorities against collectors who use illegal tactics such as harassing phone calls and false threats of litigation, arrest, and wage garnishment. The initiative targets debt collectors who attempt to collect so-called phantom debts – phony debts that consumers do not actually owe. See www.ftc.gov/news-events/press-releases/2015.

4. On September 29, 2020, the "Federal Trade Commission, along with more than 50 federal and state law enforcement partners . . . announced a nationwide law enforcement and outreach initiative to protect consumers from phantom debt collection and abusive and threatening debt collection practices . . . [with two new FTC cases against companies that] were trying to collect debts they cannot legally collect or that a consumer does not owe – a practice known as phantom debt collection." See https://www.ftc.gov/news-events/press-releases/2020/09/ftc-state-federal-law-enforcement-partners-announce-nationwide.

## II. Jurisdiction

5. The Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), 18 U.S.C. § 2724(a) (DPPA), and 28 U.S.C. § 1331. This Court has supplemental jurisdiction regarding

plaintiff's state law claims under 28 U.S.C. § 1367. Venue in this judicial district is proper because the pertinent events took place here.

**III. Parties**

6. Plaintiff Mallory Meade is an adult, natural person, residing in Kent County, Michigan. Ms. Meade is a "consumer" and "person" as the terms are defined and used in the FDCPA. Ms. Meade is a "person" as the term is defined and used in the DPPA. Ms. Meade is a "consumer," "debtor" and "person" as the terms are defined and used in the MRCPA and MOC.

7. Defendant Global Recovery Solutions, LLC ("GRS") is an active Florida limited liability company, FEIN 35-261xxxx, formed on or about January 8, 2018. The GRS 2022 Annual Report states that GRS operates at 7400 North Federal Highway, Suite C6, Boca Raton, Florida 33487. GRS also receives mail at a United States Postal Service facility located at 335 East Linton Boulevard, Suite B-14, Delray Beach, Florida 33483. Defendants Robert Mark Castro and Christopher F. Veale are owners and managing members of GRS. The registered agent for GRS is Corporation Service Company, 1201 Hays Street, Tallahassee, Florida 32301. GRS uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. GRS regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. GRS is a "debt collector" as the term is defined and used in the FDCPA. GRS is a "regulated person" as the term is defined and used in MRCPA. Alternatively, GRS is a "collection agency" and "licensee" as the terms are defined and used in MOC.

8. GRS currently is licensed (No. CCA9904480) as a Consumer Collection Agency by the Office of Financial Regulation for the State of Florida. The GRS contact telephone

number is 561-676-2954, which is registered to defendant Robert Mark Castro.

9. On or about February 23, 2021, defendants registered through GoDaddy.com, LLC, the internet domain www.globalrecoverysolution.com, which linked to an internet website that described GRS as follows: "Global Recovery Solutions is an accounts receivable portfolio investment firm. Global Recovery Solutions manages and services acquired accounts. . . . We are committed to providing a positive experience for consumers . . . ." The website provides a contact telephone number, 415-935-1925.

10. On May 1, 2020, GRS, claiming to be doing business in a strip mall at 1956 NE 5th Avenue, Suite 10, Boca Raton, Florida 33431, was approved by the Small Business Administration for a PPP Loan in the amount of $106,197.00 through JPMorgan Chase Bank, N.A., supposedly to retain jobs for 22 employees. The application submitted by GRS to obtain the loan falsely represented to the lender and government that GRS is in the business of "All Other Outpatient Care Centers."

11. According to Moody's Analytics, GRS documents filed by GRS with governmental entities have included telephone number 347-714-3244, which is registered to non-party Daniel D'Elia, a debt collector.

12. GRS through its employees and agents directly and indirectly participated in the efforts to collect an alleged debt from Ms. Meade that are described in this complaint.

13. GRS through its employees and agents directly and indirectly participated in the acquisition, disclosure and use of Ms. Meade's private, personal, financial and account information, for an impermissible purpose, as described in this complaint.

14. Defendant Robert Mark Castro is a natural person, age 37, purportedly residing at 1821 NW 40th Drive, Boca Raton, Florida 33431. Mr. Castro is an owner, officer, director,

member, manager, employee and agent of GRS. Mr. Castro uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Castro regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. Castro is a “debt collector” as the term is defined and used in the FDCPA. Mr. Castro is a “regulated person” as the term is defined and used in MRCPA. Alternatively, Mr. Castro is a “collection agency” and “licensee” as the terms are defined and used in MOC.

15. Mr. Castro does business as “United Processing Group,” pursuant to an Application for Registration of Fictitious Name (No. G20000130993) filed October 8, 2020 by Mr. Castro with the Florida Secretary of State. Mr. Castro provided a mailing address of “Global Recovery Solutions, LLC, 335 East Linton Boulevard, #2098, Delray Beach, Florida 33483.

16. Mr. Castro (a) created the collection policies and procedures used by GRS and its employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of GRS, (c) oversaw the application of the collection policies and procedures used by GRS and its employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by GRS and its employees and agents, to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Ms. Meade as stated in this complaint, (e) ratified the unlawful debt collection practices and procedures used by GRS and its employees and agents, in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by GRS and its employees and agents, in attempts to collect an alleged debt from Ms. Meade as stated in this complaint.

17. Mr. Castro directly and indirectly participated in the efforts to collect an alleged

debt from Ms. Meade that are described in this complaint.

18. Mr. Castro directly and indirectly participated in the acquisition, disclosure and use of Ms. Meade's private, personal, financial and account information, without a permissible purpose, as described in this complaint.

19. Defendant Christopher Frederic Veale is a natural person, age 49, purportedly residing at 6472 San Michel Way, Delray Beach, Florida 33484. Mr. Veale is an owner, officer, director, member, manager, employee and agent of GRS. Mr. Veale uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Veale regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. Veale is a "debt collector" as the term is defined and used in the FDCPA. Mr. Veale is a "regulated person" as the term is defined and used in MRCPA. Alternatively, Mr. Veale is a "collection agency" and "licensee" as the terms are defined and used in MOC.

20. Mr. Veale (a) created the collection policies and procedures used by GRS and its employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of GRS, (c) oversaw the application of the collection policies and procedures used by GRS and its employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by GRS and its employees and agents, to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Ms. Meade as stated in this complaint, (e) ratified the unlawful debt collection practices and procedures used by GRS and its employees and agents, in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by GRS and its

employees and agents, in attempts to collect an alleged debt from Ms. Meade as stated in this complaint.

21. Mr. Veale directly and indirectly participated in the efforts to collect an alleged debt from Ms. Meade that are described in this complaint.

22. Mr. Veale directly and indirectly participated in the acquisition, disclosure and use of Ms. Meade's private, personal, financial and account information, without a permissible purpose, as described in this complaint.

23. Non-party CV Capital Management, LLC is a Florida limited liability company formed January 14, 2021, owned and managed by Mr. Veale. It will need to be determined in discovery whether CV Capital Management, LLC directly or indirectly participated in the efforts to collect an alleged debt from Ms. Meade that are described in this complaint.

24. Defendants own, control and use a merchant account, established in the name of "United Processing Group," telephone number 844-200-5213, with a Florida address, to receive credit card and debit card payments from defendants' victims. Money deposited in the merchant account is shared among and distributed to the defendants named in this lawsuit, their employees and agents, and perhaps others. The application filed by defendants with the ISO and Acquiring Bank to create the merchant account, as well as the related monthly account statements and other account records, will need to be obtained via subpoena in discovery from the ISO and Acquiring Bank, so that plaintiff can identify the other entities that receive distributions of money from the merchant account and are involved in defendants' debt collection scam.

25. Defendants and their employees and agents have used multiple telephone numbers in connection with defendants' debt collection scam, including 216-315-0182, 616-229-4665, 844-200-5213, 855-411-0297 and 855-810-3772.

26. Defendants and their employees and agents sometimes use the unregistered alias "American Debt Management" to operate defendants' debt collection scam.

27. Plaintiff is proceeding against defendants collectively under a common enterprise theory, by which "each entity within a set of interrelated companies may be held jointly and severally liable for the actions of other entities that are part of the group." *F.T.C. v. Tax Club, Inc.*, 994 F. Supp. 2d 461, 469 (S.D.N.Y. 2014). To determine whether a common enterprise, or a "maze of interrelated companies," exists, courts consider "the pattern and framework of the whole enterprise." *Delaware Watch Co. v. F.T.C.*, 332 F.2d 745, 746 (2d Cir. 1964). Although no one factor is controlling, relevant factors include whether the corporate defendants "(1) maintain officers and employees in common, (2) operate under common control, (3) share offices, (4) commingle funds, and (5) share advertising and marketing." *Tax Club, Inc.*, 994 F. Supp. 2d at 469 (citation omitted); *F.T.C. v. Consumer Health Benefits Ass'n*, No. 10-CV-3551(ILG), 2011 WL 3652248, *5 (E.D.N.Y. Aug. 18, 2011). Further, a common enterprise analysis is neither an alter ego inquiry nor an issue of corporate veil piercing; instead, the entities within the enterprise may be separate and distinct corporations. *F.T.C. v Wyndham Worldwide Corp.*, No. 13-1887(ES), 2014 WL 2812049, *5 (D. N.J. June 23, 2014) (citing *F.T.C. v. Direct Benefits Grp.*, No. 11-1186, 2013 WL 3771322, *18 (M.D. Fla. July 18, 2013)).

28. All defendants are intricately bound together and combine their efforts in a joint and common enterprise, using concerted efforts to collect debts allegedly owed by consumers throughout the United States. Defendants operate collectively and together, in such as way that they are collecting debts for the benefit of each other, and making each defendant jointly and severally for the unlawful acts of each defendant.

29. Defendants operate as a single entity, commonly owned, operated and managed, operating from shared office space, sharing the same staff, equipment, supplies and telephonic services, and commingling revenue, expenses and payroll.

30. An entity that itself meets the definition of debt collector is liable for the unlawful collection activities carried out by another debt collector on its behalf. *See, e.g., Pollice v. National Tax Funding, L.P.,* 225 F.3d 379, 404-06 (3d Cir.2000); *Janetos v. Fulton Friedman & Gullace, LLP,* 825 F.3d 317, 325-26 (7th Cir.2016); *Fox v. Citicorp Credit Services, Inc.,* 15 F.3d 1507, 1516 (9th Cir.1994); *Wadlington v. Credit Acceptance Corp.,* 76 F.3d 103, 108 (6th Cir.1996); *Verburg v. Weltman, Weinberg & Reis Co., LPA et al.,* No. 1:13-cv-1328, 2016 WL 1273349, *7-8 (W.D. Mich. Mar. 28, 2016).

31. A shareholder, owner, officer, member, manager, employee or agent of a corporate debt collector can be held liable for violating the FDCPA, without piercing the corporate veil, by being directly involved in the day-to-day operation of the company, including the training and managing of employees, reviewing or supervising the review of accounts, materially participating in the activities of the company, supervising collection activities, overseeing compliance with applicable collection laws, ratifying unlawful acts, and the like, for the reason that each such individual is himself a "debt collector" within the statutory definition, namely, each is a "person" in a business, "the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). *See Kistner v. Law Offices of Michael P. Margelefsky, LLC,* 518 F.3d 433, 435-438 (6th Cir. 2008); *Russell v. Goldman Roth Acquisitions, LLC,* 847 F.Supp.2d 994, 1004-06 (W.D.Mich. 2012).

## IV. Facts

32. On or about June 18, 2018, plaintiff Mallory Meade borrowed a small amount of money from a storefront lender named Check 'N Go ("CNG"), located in Grand Rapids, Michigan. Ms. Meade borrowed and used the money for personal, family and household purposes. CNG assigned the transaction an original account number of 29949255.

33. Ms. Meade borrowed the money in what is commonly called a "payday loan." Ms. Meade borrowed $500.00 for a term of approximately two weeks. CNG charged Ms. Meade interest at an annual rate that exceeded 340 percent.

34. In Michigan, payday loans are regulated by the Deferred Presentment Service Transactions Act, MCL 487.2122 *et seq.*

35. CNG claimed that Ms. Meade failed to repay the debt.

36. CNG claimed that Ms. Meade's account became delinquent and in default.

37. CNG charged off the account and related debt.

38. On or about December 5, 2018, CNG sold Ms. Meade's account and related alleged debt to non-party Global Trust Management, LLC ("GTM"), 4805 West Laurel Street, Suite 300, Tampa, Florida 33607. GTM is managed by non-party Bradley Spoor. GTM currently is licensed (No. CCA9902589) as a Consumer Collection Agency by the Office of Financial Regulation for the State of Florida. GTM uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. GTM is a "debt collector" as the term is defined and used in the FDCPA. If it is confirmed in discovery that defendants were acting for the benefit of GTM when attempting to collect the alleged debt from Ms. Meade, an amended complaint will be filed to name GTM as an additional defendant in this lawsuit.

39. On or after December 5, 2018, GTM sold or otherwise assigned Ms. Meade's account and related alleged debt to non-party Reel Time Capital LLC ("RTC"), 4805 West Laurel Street, Suite 300, Tampa, Florida 33607. RTC is managed by non-party Bradley Spoor. RTC uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. RTC is a "debt collector" as the term is defined and used in the FDCPA. If it is confirmed in discovery that defendants were acting for the benefit of RTC when attempting to collect the alleged debt from Ms. Meade, an amended complaint will be filed to name RTC as an additional defendant in this lawsuit.

40. On or about February 25, 2022, RTC placed Ms. Meade's account for collection with defendant Global Recovery Solutions, LLC, pursuant to the terms of an Agency Agreement between RTC and GRS, whereby GRS and its employees and agents would attempt to collect the account and related alleged debt from Ms. Meade, with GRS to remit all money collected to RTC, net a contingency fee to be retained by GRS.

41. On or about May 12, 2022, defendants' employee and agent placed a call from telephone number 616-229-4665 to Ms. Meade's cellular telephone and left the following scripted message on Ms. Meade's voice mail: "This information is intended for Mallory Meade. Claim Number is 170-146. This is Gina Lewis contacting you regarding an Order that was submitted to my office. I need to verify your address today for service of process at your residence and your place of employment. Miss Meade, there's a claim that's being filed against you. At this point you have one opportunity to contact the firm handling your claim and discuss this matter immediately. They can be reached at 855-411-0297 and the Claim Number is 170-146. Mallory Meade you've officially been notified."

42. On or about May 12, 2022, defendants' employee and agent placed a call from telephone number 616-229-4665 to Ms. Meade's brother's cellular telephone and left the following scripted message on Ms. Meade's brother's voice mail: "This information is intended for Mallory Meade. Claim Number is 170-146. This is Gina Lewis contacting you regarding an Order that was submitted to my office. I need to verify an address today for service of process at your residence and place of employment. Miss Meade, there's a claim that's being filed against you and at this point you have an opportunity to contact the firm handling your claim to discuss this matter. They can be reached at 855-411-0297 and the Claim Number I have listed is 170-146. Mallory Meade you've officially been notified." That same day, Ms. Meade's brother contacted Ms. Meade and provided Ms. Meade with an audio file containing the message left on voice mail.

43. On or about May 16, 2022, a return call was made to telephone number 855-411-0297, which was answered by defendants' employee and agent who identified herself as "Crystal," the "Litigation Floor Manager" for "United," who made the following representations:

a) Ms. Meade owed $565.45 for an unpaid payday loan obtained by Ms. Meade from Check 'N Go in 2018.

b) "United" is a "Mediation Firm."

c) United was handling a "case" that had been filed against Ms. Meade to collect the debt.

d) Ms. Meade was being sued for "breach of contract" and "intent to defraud Check 'N Go."

e) United had hired a "location service" to serve Ms. Meade that very day

with documents to appear in court.

f) Once Ms. Meade was served, Ms. Meade would be obligated to appear in court and would be ordered to pay attorney fees, court costs and interest, and the court would issue garnishment orders.

g) United would not provide Ms. Meade with any documentation regarding the debt, other than a "paid in full letter" after Ms. Meade had paid money to defendants.

44. On May 16, 2022, Ms. Meade authorized a payment of $100.00 to defendants by debit card, which defendants caused to be deposited in a merchant account maintained in the name of "United Processing Group," located in Florida, telephone number 844-200-5213.

45. On May 27, 2022, defendants' female employee and agent placed a call to Ms. Meade and left the following message on voice mail: "Good morning Ms. Meade. This is [name unintelligible] from United. I'm handling your Claim, 170-146. I received your file on my desk in a default status. It showed that the payment of $155.00 you placed on file was returned. You need to contact me back immediately to keep your Claim in our office. My contact number is 855-810-3772. Again, if we don't hear back from you by the end of today's business day, we will be sending your account back out for processing."

46. On May 31, 2022, defendants' employee and agent placed a call to Ms. Meade and left the following message on voice mail: "This information is intended for Mallory Meade. This is Gina Lewis contacting you regarding an Order that was resubmitted to my office. I've verified your address for service of process. Ma'am, you were given opportunities to contact the firm here to [unintelligible] the claim, and at this point you have chosen not to. I suggest you

contact them back immediately at 855-810-3772. Alright? The Claim Number is 170-146. Mallory Meade this is your final notification."

47. The above-described threats and representations made by defendants and their employees and agents were false and part of a scripted and unlawful debt collection practice that is ongoing and is currently being perpetrated by defendants to coerce the payment of money from thousands of consumers across the country through the use of false threats of litigation and prosecution, intimidation and unlawful harassment.

48. Defendants and their employees and agents failed to meaningfully identify themselves and their companies.

49. Defendants and their employees and agents falsely represented the identity of the entity to whom the alleged debt is owed.

50. Defendants and their employees and agents wrongfully used Ms. Meade's personal and financial information, in an effort to unlawfully coerce the payment of money from Ms. Meade.

51. Defendants and their employees and agents falsely represented that they are a mediation firm.

52. Defendants and their employees and agents falsely represented that they are attorneys and a law firm.

53. Defendants and their employees and agents falsely represented that they have a Litigation Department.

54. Defendants and their employees and agents falsely represented and falsely implied that lawyers were involved in the efforts to collect the alleged debt.

55. Defendants and their employees and agents falsely represented and falsely implied that lawyers would become involved in the efforts to collect the alleged debt.

56. Defendants and their employees and agents falsely represented and falsely implied that a lawsuit was going to be filed against Ms. Meade to collect the alleged debt.

57. Defendants and their employees and agents falsely represented and falsely implied that a lawsuit already had been filed against Ms. Meade to collect the alleged debt.

58. Defendants and their employees and agents falsely represented and falsely implied that defendants represent Check 'N Go.

59. Defendants and their employees and agents falsely represented and falsely implied that a lawsuit had been filed by Check 'N Go against Ms. Meade.

60. Defendants and their employees and agents falsely represented that a process server was being dispatched to Ms. Meade's residence and place of employment to serve Ms. Meade with a summons and complaint that had been filed against Ms. Meade in efforts to collect the alleged debt.

61. Defendants and their employees and agents falsely represented that Ms. Meade had committed fraud.

62. Defendants and their employees and agents falsely represented that Ms. Meade had defrauded Check 'N Go.

63. Defendants and their employees and agents falsely represented and falsely implied that Ms. Meade had committed a crime.

64. Defendants and their employees and agents falsely represented and falsely implied that a judgment was going to entered against Ms. Meade.

65. Defendants and their employees and agents falsely represented that a judgment would be entered against Ms. Meade that included court costs, filing fees, attorney fees, and interest.

66. Defendants and their employees and agents falsely represented that Ms. Meade's wages and assets would be garnished.

67. Defendants did not intend to file a lawsuit against Ms. Meade in any court in efforts to collect the alleged debt.

68. Defendants and their employees and agents falsely represented that Ms. Meade was not allowed to request defendants provide documentation to validate the alleged debt.

69. The FDCPA states that it is unlawful for a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of any debt. 15 U.S.C. § 1692d.

70. The FDCPA states that it is unlawful for a debt collector to use criminal means to harm the reputation of any person. 15 U.S.C. § 1692d(1).

71. The FDCPA states that it is unlawful for a debt collector to place a telephone call without meaningful disclosure of the caller's identity. 15 U.S.C. § 1692d(6).

72. The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that the debt collector is vouched for or affiliated with the United States or any State. 15 U.S.C. § 1692e(1).

73. The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the character, amount, or legal status of any debt. 15 U.S.C. § 1692e(2)(A).

74. The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the compensation which may be lawfully received by any debt collector for the collection of any debt. 15 U.S.C. § 1692e(2)(B).

75. The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that any individual is an attorney or that any communication is from any attorney. 15 U.S.C. § 1692e(3).

76. The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action. 15 U.S.C. § 1692e(4).

77. The FDCPA states that it is unlawful for a debt collector to threaten to take any action that cannot legally be taken or that is not intended to be taken. 15 U.S.C. § 1692e(5).

78. The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that the consumer committed a crime or other conduct in order to disgrace the consumer. 15 U.S.C. § 1692e(7).

79. The FDCPA states that it is unlawful for a debt collector to communicate to any person credit information which is known or which should be known to be false. 15 U.S.C. § 1692e(8).

80. The FDCPA states that it is unlawful for a debt collector to use any false representation or deceptive means to collect or attempt to collect any debt. 15 U.S.C. § 1692e(10).

81. The FDCPA states that it is unlawful for a debt collector to communicate in a communication with a consumer to fail to disclose that the communication is from a debt collector. 15 U.S.C. § 1692e(11).

82. The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that documents are legal process. 15 U.S.C. § 1692e(13).

83. The FDCPA states that it is unlawful for a debt collector to use any business, company, or organization name other than the true name of the debt collector's business, company, or organization. 15 U.S.C. § 1692e(14).

84. The FDCPA states that it is unlawful for a debt collector to use unfair or unconscionable means to collect or attempt to collect any debt. 15 U.S.C. § 1692f.

85. The FDCPA states that it is unlawful for a debt collector to collect any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by law. 15 U.S.C. § 1692f(1).

86. Defendants and their employees and agents have violated the FDCPA, 15 U.S.C. §§ 1692d, 1692d(1) and (6), 1692e, 1692e(1), (2)(A), (2)(B), (3), (4), (5), (7), (8), (10), (11), (13) and (14), and 1692f and 169f(1).

87. Defendants and their employees and agents falsely accused Ms. Meade of committing a crime. Ms. Meade did not commit a crime under Michigan law because the Michigan Deferred Presentment Service Transactions Act, which regulates payday lending in Michigan, expressly states that the borrower in a payday loan transaction "is not subject to any criminal penalty in the event the drawer's check is dishonored." M.C.L. § 487.2158(4). In other words, in Michigan the failure to repay a payday loan is treated like any other simple breach of

contract matter.

88. Morever, M.C.L. § 750.213 states in pertinent part:

> Sec. 213. MALICIOUS THREATS TO EXTORT MONEY – Any person who shall, either orally or by a written or printed communication, maliciously threaten to accuse another of any crime or offense . . . with intent to extort money or any pecuniary advantage whatever . . . shall be guilty of a felony, punishable by imprisonment in the state prison not more than 20 years or by a fine of not more than 10,000 dollars.

Collection of a valid, enforceable debt does not permit malicious threats of injury if payment is not made. *People v. Maranian*, 359 Mich. 361 (1960).

89. A debt collector may not communicate, in connection with the collection of a debt, with any person other than the consumer, except to acquire "location information" about the consumer. 15 U.S.C. § 1692b; 15 U.S.C. § 1692c(b).

90. The FDCPA defines "location information" to mean "a consumer's place of abode and his telephone number at such place, or his place of employment." 15 U.S.C. § 1692a(7).

91. A debt collector when communicating with any person other than the consumer for the purpose of acquiring location information about the consumer shall not state that such consumer owes any debt. 15 U.S.C. § 1692b(2).

92. Defendants violated the FDCPA, 15 U.S.C. § 1692b(2) and 15 U.S.C. § 1692c(b), by placing the above-described call to the cellular telephone belonging to Ms. Meade's brother and leaving the above-quoted message on Ms. Meade's brother's voice mail.

93. The FDCPA requires that, within five days of the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the required

information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing the information mandated by 15 U.S.C. § 1692g(a).

94. Defendants and their employees and agents failed to timely send to Ms. Meade a notice containing the information required by 15 U.S.C. § 1692g(a).

95. Each defendant and each defendant's employees, managers, owners, agents, affiliates and co-conspirators had knowledge of, approved of, and ratified the use of the unlawful debt collection practices that are described in this complaint.

96. Defendants and their employees, managers, owners, agents, affiliates and co-conspirators each have intentionally and wilfully violated the FDCPA.

97. The FDCPA states in part, "It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors" and "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." 15 U.S.C. § 1692(e).

98. Defendants and their employees, managers, owners, agents, affiliates and co-conspirators, to increase their business and profits, have knowingly chosen to use debt collection practices that violate the FDCPA, to the competitive disadvantage of those debt collectors who have chosen to abide by the law and refrain from using those same unlawful debt collection practices.

99. In connection with efforts to collect an alleged debt from Ms. Meade, defendants obtained and used personal information regarding Ms. Meade from an internet skip-tracing database, such as LexisNexis Risk Management, Inc. (Accurint), TransUnion Risk and Alternative Data Solutions, Inc. (TLO), UDT Group, LLC (Delvepointe), or Interactive Data,

LLC.

100. The database used by defendants was derived in part from non-public motor vehicle records and searches made with the database are subject to the terms of the Drivers Privacy Protection Act. Subscribers to the database must sign an application stating that the subscriber will comply with the DPPA. Further, every time a subscriber logs on to use the database, the subscriber is confronted with a screen that requires the subscriber to affirmatively state the permissible purpose under the DPPA for which the subscriber is requesting the personal information.

101. The DPPA was enacted in response to growing concerns over the ease with which stalkers and other criminals could obtain personal information from state departments of motor vehicles. *Reno v. Condon*, 528 U.S. 141, 143–44, 120 S.Ct. 666, 145 L.Ed.2d 587 (2000).

102. The DPPA states:

> (a) Procurement for unlawful purpose. – It shall be unlawful for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under section 2721(b) of this title.
>
> (b) False representation. – It shall be unlawful for any person to make false representation to obtain any personal information from an individual's motor vehicle record.

18 U.S.C. § 2722.

103. The DPPA also states:

> "personal information" means information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code) [and] telephone number . . . .

18 U.S.C. § 2725(3).

104. The DPPA also states:

> A person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter, shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court.

18 U.S.C. § 2724(a).

105. The DPPA enumerates the only "permissible uses" for which personal information may be obtained. 18 U.S.C. § 2721(b).

106. Defendants did not have a "permissible use" under the DPPA to obtain, disclose or use personal information regarding Ms. Meade.

107. Defendants used the database to obtain, disclose and use personal information regarding Ms. Meade.

108. Defendants made a false representation to the provider of the database to obtain personal information regarding Ms. Meade that was derived from Ms. Meade's motor vehicle record.

109. Alternatively, the entity that obtained Ms. Meade's personal information from the database and disclosed the personal information to defendants, made a false representation to the provider of the database to obtain personal information regarding Ms. Meade that was derived from Ms. Meade's motor vehicle record.

110. It is a crime to knowingly violate the DPPA. 18 U.S.C. § 2723.

111. Defendants knowingly obtained, disclosed and used Ms. Meade's personal information, from a motor vehicle record, for a purpose not permitted under the DPPA, and with willful or reckless disregard for the law.

112. No defendant had a "permissible use" as the phrase is defined in the DPPA to obtain, use or disclose Ms. Meade's personal information obtained from the database.

113. No defendant had Ms. Meade's consent, permission, authorization or waiver to obtain Ms. Meade's personal information from the database.

114. A civil action under the DPPA may be commenced within four years after the cause of action accrues. 28 U.S.C. § 1658(a); *Rasmusson v. Chisago County,* , 991 F.Supp.2d 1065, 1079 (D.Minn. 2014).

115. The DPPA imposes vicarious liability on principals for the acts of the actions of their agents who act with apparent authority. *Margan v. Niles,* 250 F.Supp.2d 63, 77 (N.D.N.Y. 2003).

116. Defendants intentionally and wilfully violated the DPPA.

117. Each defendant was aware, or should have been aware, of the unlawful debt collection practices being used by the other defendants to collect alleged debts.

118. As an actual and proximate result of the acts and omissions of defendants and their employees and agents, plaintiff has suffered actual damages and injury, including but not limited to, monetary loss, fear, stress, mental anguish, emotional stress, acute embarrassment, anxiety, loss of sleep, and suffering, for which she should be compensated in an amount to be established at trial.

## V. Claims for Relief

### Count 1 – Fair Debt Collection Practices Act

119. Plaintiff incorporates the foregoing paragraphs by reference.

120. Each defendant has violated the FDCPA. Each defendant's violations of the FDCPA include, but are not necessarily limited to, the following:

a) Defendants violated 15 U.S.C. § 1692b;

b) Defendants violated 15 U.S.C. § 1692c;

c) Defendants violated 15 U.S.C. § 1692d by engaging in conduct, the natural consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt;

e) Defendants violated 15 U.S.C. § 1692e by using false, deceptive and misleading representations and means in connection with the collection or attempted collection of a debt;

f) Defendants violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect a debt from plaintiff; and

g) Defendants violated 15 U.S.C. § 1692g.

**Wherefore,** plaintiff seeks judgment against each defendant for:

a) Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b) Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c) Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d) Such further relief as the court deems just and proper.

**Count 2 – Drivers Privacy Protection Act**

121. Plaintiff incorporates the foregoing paragraphs by reference.

122. Each defendant has violated the DPPA, 18 U.S.C. § 2722(a) and (b).

**Wherefore,** plaintiff seeks judgment against each defendant for:

a) Actual damages, but not less than liquidated damages in the amount of $2,500.00, pursuant to 18 U.S.C. § 2724(b)(1);

b) Punitive damages pursuant to18 U.S.C. § 2724(b)(2);

c) Reasonable costs and attorneys' fees pursuant to18 U.S.C. § 2724(b)(3);

d) An injunction prohibiting defendants from further obtaining or using plaintiff's personal information, pursuant to 18 U.S.C. § 2724(b)(4);

e) An order requiring defendants to provide plaintiff with the original and all copies of any and all documents of any kind that contain any of plaintiff's personal information, pursuant to 18 U.S.C. § 2724(b)(4); and

f) An injunction prohibiting defendants from disseminating plaintiff's personal information to any other entity, pursuant to 18 U.S.C. § 2724(b)(4).

**Count 3 – Michigan Regulation of Collection Practices Act**

123. Plaintiff incorporates the foregoing paragraphs by reference.

124. Each defendant has violated the MRCPA. Each defendant's violations of the MRCPA include, but are not necessarily limited to, the following:

a) Defendants violated M.C.L. § 445.252(a) by communicating with a debtor in a misleading or deceptive matter, including simulated judicial process;

b) Defendants violated M.C.L. § 445.252(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

c) Defendants violated M.C.L. § 445.252(e) by concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt;

d) Defendants violated M.C.L. § 445.252(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened, (ii) the legal rights of a creditor or debtor, and (iii) that the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the

seizure, garnishment, or sale of the debtor's property;

e) Defendants violated M.C.L. § 445.252(n) by using a harassing, oppressive, or abusive method to collect a debt;

f) Defendants violated M.C.L. § 445.252(q) by failing to implement a procedure designed to prevent a violation by an employee; and

g) Defendants violated M.C.L. § 445.258 by communicating with plaintiff's brother.

**Wherefore,** plaintiff seeks judgment against defendants for:

a) Actual damages pursuant to M.C.L. § 445.257(2);

b) Treble the actual damages pursuant to M.C.L. § 445.257(2);

c) Statutory damages pursuant to M.C.L. § 445.257(2);

d) Reasonable attorney's fees and court costs pursuant to M.C.L. § 445.257(2); and

e) Equitable relief pursuant to M.C.L. § 445.257(1).

**Count 4 – Michigan Occupational Code**

125. Plaintiff incorporates the foregoing paragraphs by reference.

126. Each defendant has violated the MOC. Each defendant's violations of the MOC include, but are not necessarily limited to, the following:

a) Defendants violated M.C.L. § 339.915(a) by communicating with a debtor in a misleading or deceptive matter, including simulated judicial process;

b) Defendants violated M.C.L. § 339.915(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

c) Defendants violated M.C.L. § 339.915(e) by concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt;

d) Defendants violated M.C.L. § 339.915(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened; (ii) the legal rights of a creditor or debtor; and (iii) that the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, attachment or sale of the debtor's property;

e) Defendants violated M.C.L. § 339.915(n) by using a harassing, oppressive, or abusive method to collect a debt;

f) Defendants violated M.C.L. § 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee; and

g) Defendants violated M.C.L. § 339.919 by communicating with plaintiff's brother.

**Wherefore,** plaintiff seeks judgment against defendants for:

a) Actual damages pursuant to M.C.L. § 339.916;

b) Treble the actual damages pursuant to M.C.L. § 339.916;

c) Statutory damages pursuant to M.C.L. § 339.916;

d) Equitable relief pursuant to M.C.L. § 339.916; and

e) Reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916(2).

Dated: June 29, 2022

/s/ Phillip C. Rogers

Phillip C. Rogers (P34356)
Attorney for Plaintiff
Centennial Plaza, Ste. 205
2851 Charlevoix Dr. SE
Grand Rapids, MI 49546-7090
(616) 776-1176
ConsumerLawyer@aol.com